UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE,

                Plaintiff,                     Case No. 2:26-cv-12477

      v.                              Honorable:

CENTER FOR EMPLOYMENT        Mag. Judge:
OPPORTUNITIES, INC.,

                Defendant.

---

Attorneys for Plaintiff:
Nicholas Roumel (P37056)
Zainab Bhindarwala (IL 6348872)
**ROUMEL LAW**
4101 Thornoaks Dr.
Ann Arbor MI 48104
734-645-7507
*nick@roumel-law.com*
*zainab@roumel-law.com*

---

## COMPLAINT and JURY DEMAND

Plaintiff Jane Doe states her complaint as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Jane Doe is an individual residing in West Bloomfield, Michigan.

2.      Jane Doe requests anonymity, and wishes to pursue this case under a pseudonym, due to her status as a victim of sexual harassment and assault. On information and belief, Defendants are able to ascertain her true identity from the details in this suit. Plaintiff will file the appropriate motion to formally permit her to proceed through a pseudonym, if necessary and requested by this court.

3.      Defendant Center for Employment Opportunities, Inc. ("CEO") is a 501(c)(3) non-profit registered and headquartered in the State of New York.

4.      CEO operates in many locations across the United States, including in Michigan. CEO's Michigan offices are in Detroit and Pontiac.

5.      This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. ("ADEA"); Michigan's Persons with Disabilities Civil Rights Act, MCL § 37.1101 *et seq.* ("PWDCRA"); and Michigan's Elliott-Larson Civil Rights Act, MCL § 37.2201 *et seq.* ("ELCRA").

6.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question).

7.      Although Ms. Doe executed a purported arbitration agreement with CEO, to the extent it would otherwise be enforceable, it is invalid under the "Ending

2

Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021" (EFAA), as this case arises from allegations of sexual assault and harassment.

8. Venue is proper in the Eastern District of Michigan per 28 U.S.C. § 1391(b)(2), as the causes of action occurred in Wayne County, Michigan, in the Eastern District of Michigan.

9. Ms. Doe filed a charge of discrimination with the EEOC on or about July 28, 2025, and an amended charge on or about October 19, 2025. She received her right to sue letter on May 5, 2026. She brings this action timely, within 90 days of receipt of that letter.

## FACTUAL ALLEGATIONS

10. Defendant CEO is a 501(c)(3) nonprofit organization that provides employment services for individuals released from incarceration.

11. Ms. Doe has formal education and experience as a professional educator, with Master's Degrees in Education and in Communication.

12. Ms. Doe was hired by CEO effective March 1, 2021, as a Life Skills Educator, and she was the point person for CEO's Pathways to Employment ("P2E") program. She led large group workshops in CEO's Detroit and Pontiac locations to prepare CEO's program participants for success in temporary and permanent employment.

13.　Her initial compensation was an annual salary of $42,000.14 with commensurate fringe benefits. Effective October 9, 2021, her annual salary increased to $43,260.14. And effective May 21, 2022, her annual salary increased to $49,065.93.

14.　Ms. Doe's personnel records demonstrate that she was an experienced hire that went above and beyond at CEO, including by leveraging her personal and professional connections to benefit CEO's programs. Her supervisors praised her relationship building skills, level of preparation, and resourcefulness.

### Ms. Doe Experienced Sexual Harassment and Assault

15.　Beginning in June 2023, Ms. Doe experienced three incidents at work that deeply traumatized her.

### First Incident of Sexual Harassment and Assault

16.　The first incident occurred at CEO's Detroit location on or around June 8, 2023.

17.　Ms. Doe informed a CEO participant that he had not completed his required trainings, and the participant reacted badly to this news. He raised his voice, and his demeanor became increasingly aggressive, making Ms. Doe fear for her safety.

18.     Ms. Doe moved the conversation from the classroom to the more open lobby. The classroom only had one door, and Ms. Doe felt the lobby would be safer for herself.

19.     The participant continued yelling at Ms. Doe in the lobby.

20.     Other CEO employees were present. All were women.

21.     The participant got down on his knees and shouted profanities at Ms. Doe.

22.     Ms. Doe's supervisor at the time, Nina Hicks, came to the lobby to see what was going on.

23.     The participant stood up and threw a bottle at Ms. Doe and Ms. Hicks.

24.     He moved toward the exit and spat at Ms. Doe and Ms. Hicks on his way out.

25.     He said he would return and "better not see either one of you b*tches here."

26.     After the participant left, Ms. Doe tried to talk to Ms. Hicks about what happened.

27.     Ms. Hicks said it was "nothing," and that she didn't want to hear anything else about that participant.

28.     Ms. Doe called CEO's Employee Relations department to submit an internal incident report.

29. Ms. Doe also went to the police station with Ms. Hicks to fill out a police report.

30. Ms. Hicks' behavior towards Ms. Doe changed drastically after this incident. She became cold towards Ms. Doe and communicated with her sparingly.

**Second Incident of Sexual Harassment**

31. The second incident occurred a few months later, on or around November 19, 2023.

32. A different CEO participant texted Ms. Doe's work cell phone propositioning to pay her for sexual favors.

33. Ms. Doe was disturbed, and she brought up the incident and her safety concerns with Ms. Hicks.

34. Ms. Doe told Ms. Hicks that she was specifically concerned because this was not an isolated occurrence. At least one other female employee at CEO had been similarly propositioned by a participant.

35. Ms. Hicks did not respond to Ms. Doe's concerns.

36. Ms. Doe filed an incident report about this incident with CEO's Employee Relations team.

**Third Incident of Sexual Harassment**

37. The third incident occurred on or around October 23, 2024.

38.     A man called CEO's Detroit office.

39.     CEO's Fellow, Vashti Timmons, provided the caller with Ms. Doe's phone number.

40.     Ms. Timmons messaged Ms. Doe via Google Chat asking Ms. Doe to call her.

41.     Ms. Doe called Ms. Timmons, and Ms. Timmons told her that she had provided the caller with Ms. Doe's phone number.

42.     Ms. Timmons did not warn Ms. Doe that the caller was acting inappropriately and possibly masturbating on the phone.

43.     On information and belief, Ms. Timmons knew this was occurring, as she noted to Ms. Doe that the caller "was talking strange."

44.     Ms. Timmons also conveyed a message from Ms. Doe's second line manager, Oluwatosin Martins, which said "I told Olu and she said if he calls you to try and get his information over the phone and THEN let him know that he is not allowed ever allowed to call or come near the office."

45.     Ms. Doe responded that the caller had left her a voicemail with his first name. Ms. Timmons stated, "we need a last name."

46.     Ms. Doe had no choice but to call back to get a last name. He did not pick up and instead responded via text, "I can't talk right now."

47. He then called Ms. Doe back himself, provided his full name, and started breathing heavily and making noises.

48. He said things like, "yeah yeah baby yeah" and "not yet hold on almost there."

49. It was clear to Ms. Doe that he was masturbating.

50. The caller then texted Ms. Doe several graphic photos of himself naked and masturbating.

51. Ms. Doe was shocked and deeply disturbed.

52. She looked up the caller and learned that he had several criminal convictions, including assault, criminal sexual conduct, and indecent exposure.

53. Ms. Doe also learned from the police department that other women had complained about this same individual and his inappropriate behavior.

54. Ms. Doe filed a police report with the Oakland County Sheriff's Office.

55. Ms. Doe emailed her then-manager, Terrell Topps, to let him know what had happened.

56. After this third incident, Ms. Doe's mental health deteriorated to the point where Ms. Doe did not wish to return to work for fear of suffering further harm.

## Ms. Doe Takes Mental Health Leave

57. Ms. Doe took five days of paid administrative leave because of how troubled she was after the third incident.

58. After she returned to work, Ms. Doe's mental health continued to deteriorate significantly.

59. She became increasingly scared that she would be harmed while at work.

60. On December 12, 2024, Ms. Doe was diagnosed with PTSD, and she was instructed to immediately take a break from work.

61. From December 12, 2024 to January 23, 2025, Ms. Doe used her paid time off so she could have some time away from work to recover.

62. When her paid time off ran out, Ms. Doe requested medical leave.

63. CEO granted Ms. Doe's request for short-term disability leave through March 6, 2025.

64. Ms. Doe was then placed on unpaid leave "with job protection" until May 30, 2025.

65. In May 2025, based on a recommendation from her psychiatrist, Ms. Doe submitted a request to CEO to extend her medical leave through June 30, 2025.

66. In response, CEO scheduled a meeting with Ms. Doe on June 3, 2025.

67.     Ms. Doe's attorney delivered a letter to CEO that morning, before the meeting was scheduled to take place. The letter recounted the incidents described above, and went on to say in part:

> Concerning [Ms. Doe's] meeting today, it is disappointing that you are not granting her request for continued unpaid leave. Her physician has determined that is medically warranted. Should you require her to return to work sooner, [Ms. Doe] will confer with me and her doctors as warranted to make the decision that is in her best interests.
>
> Accordingly, this letter is formal notice that I will be representing [Ms. Doe] and that I may be bringing appropriate claims on her behalf.

68.     At the meeting on June 3, 2025, instead of discussing Ms. Doe's leave or return to work, CEO terminated Ms. Doe's employment.

69.     CEO told Ms. Doe that the reason for terminating her employment was that her position was being eliminated.

70.     However, her position was not eliminated. On information and belief, Ms. Doe was replaced by Ms. Timmons.

71.     On information and belief, Ms. Timmons is approximately 40 years younger than Ms. Doe.

72.     Beginning in March 2024, Ms. Hicks, Mr. Topps, and Ms. Martin instructed Ms. Doe to train Ms. Timmons on how to teach P2E.

73.     P2E was Ms. Doe's primary job duty.

74.     Ms. Doe was shocked by the termination decision, and she has been damaged as described herein and below.

## LEGAL ALLEGATIONS

### Count I – Sex Discrimination and Retaliation in Violation of Title VII

75.     Previous paragraphs incorporated by reference.

76.     CEO is an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b).

77.     Ms. Doe was employed by CEO.

78.     Ms. Doe is a member of a protected class based on her sex (female).

79.     Ms. Doe was qualified for her position.

80.     Ms. Doe was subjected to unwelcome sexual harassment that was both objectively and subjectively offensive when a participant spat on her and called her a "b*tch;" when a participant propositioned her for sexual favors via text; and when a participant called her while masturbating, and sent her explicit images via text.

81.     The harassment was based on Ms. Doe's sex.

82.     The harassment created a work environment that unreasonably interfered with Ms. Doe's work performance.

83.     The harassment was so severe or pervasive as to alter the conditions of Ms. Doe's employment and create a hostile or abusive working environment.

11

84.     CEO knew or should have known about the harassment and failed to take prompt and appropriate corrective action.

85.     Ms. Doe engaged in protected activity by complaining about each incident to her manager at the time, submitting incident reports with CEO's Employee Relations, and filing police reports about the incidents.

86.     CEO was aware of each instance of Ms. Doe's protected activity.

87.     After Ms. Doe complained about the first incident, Ms. Hicks retaliated against Ms. Doe by drastically changing her behavior towards Ms. Doe, and treating Ms. Doe "coldly."

88.     After Ms. Doe complained about the second incident, Ms. Hicks retaliated against Ms. Doe by failing to address her safety concerns.

89.     After Ms. Doe complained about the third incident, CEO retaliated by making it difficult for Ms. Doe to take paid leave to recover.

90.     Because of CEO's discrimination and retaliation on the basis of her sex, Ms. Doe has been damaged as set forth herein and below.

**Count II – Disability Discrimination and Retaliation in Violation of the ADA**

91.     Previous paragraphs incorporated by reference.

92.     CEO is an employer within the meaning of the ADA, 42 U.S.C. § 12111.

93. Ms. Doe was disabled within the meaning of the ADA, 42 U.S.C. § 12102, when she was diagnosed with PTSD.

94. Ms. Doe was qualified for her position, with or without reasonable accommodation.

95. CEO knew or had reason to know of Ms. Doe's disability.

96. Ms. Doe requested a reasonable accommodation of medical leave.

97. Ms. Doe engaged in protected activity when she requested an extension of her medical leave.

98. Ms. Doe also engaged in protected activity when she retained a lawyer who sent CEO a letter prior to the meeting on June 3, 2025.

99. CEO was aware of Ms. Doe's protected activity.

100. CEO failed to provide Ms. Doe with the necessary accommodation of extending her medical leave.

101. Ms. Doe suffered an adverse action when CEO terminated her employment on June 3, 2025.

102. Because of CEO's discrimination and retaliation on the basis of her disability, Ms. Doe has been damaged as set forth herein and below.

### Count III - Age Discrimination in Violation of the ADEA

103. Previous paragraphs incorporated by reference.

104.   Ms. Doe is a member of a protected class based on her age (71 years old).

105.   Ms. Doe was qualified for her position.

106.   Ms. Doe was replaced by CEO's Fellow, Ms. Timmons, who is much younger than Ms. Doe.

107.   Beginning in March 2024, Ms. Doe was instructed to train Ms. Timmons on how to do Ms. Doe's primary job duty of teaching P2E.

108.   Because of CEO's discrimination on the basis of her age, Ms. Doe has been damaged as set forth herein and below.

### Count IV - Disability Discrimination and Retaliation in Violation of the PWDCRA

109.   Previous paragraphs incorporated by reference.

110.   CEO is an employer within the meaning of MCL § 37.1201.

111.   Ms. Doe has a disability as defined by MCL § 37.1103.

112.   CEO failed to accommodate Ms. Doe, discriminated against her based on her disability, and retaliated against her.

113.   Because of CEO's violations of the PWDCRA, Ms. Doe has been damaged as set forth herein and below.

14

**Count V - Sex Discrimination and Retaliation in Violation of ELCRA**

114.   Previous paragraphs incorporated by reference.

115.   CEO is an employer within the meaning of MCL § 37.2201.

116.   Ms. Doe was qualified for her position.

117.   Ms. Doe is a member of a protected class because of her sex (female) and age (71 years old).

118.   CEO's actions were motivated by Ms. Doe's sex and age, as well as her protected activity.

119.   Ms. Doe was subjected to adverse treatment because of her protected identities and for engaging in protected activity.

120.   But for Ms. Doe's sex, age, and/or her opposition to sex discrimination, CEO would not have taken such adverse actions against her.

121.   Because of CEO's violations of ELCRA, Ms. Doe has been damaged as set forth herein and below.

**DAMAGES**

122.   Defendant's actions were done willfully with reckless indifference to Plaintiff's right to be free from illegal harassment, discrimination, and retaliation.

123.   Defendant's actions directly caused and proximately caused Plaintiff the following damages:

a. *economic damages*: including but not limited to past and future lost wages; lost fringe benefits such as various types of insurance, retirement, bonuses, pay raises, training and promotions; and consequential damages as may be proven.

b. *non-economic damages*: including but not limited to embarrassment, humiliation, outrage, pain and suffering, harm to reputation, mental and emotional distress; exemplary damages to the extent allowed by law; and punitive damages as may be allowed by law.

124.   Under Title VII, an aggrieved person may also be entitled to punitive damages.

## Jury Demand

Plaintiff demands a trial by jury on all issues so triable.

## Relief Requested

*W H E R E F O R E,* Plaintiff Jane Doe requests this honorable court grant her the following as permitted by law and equity:

a.     compensatory damages;

b.     punitive damages;

c.     liquidated damages;

d.     equitable and/or injunctive relief;

e.     compensable costs, interest, and reasonable attorney fees;

f.     any other relief as permitted under the law to vindicate her rights.

Respectfully submitted,
Attorneys for Plaintiff Jane Doe

**ROUMEL LAW**

*/s/ Nicholas Roumel*

Nicholas Roumel, Attorney
Zainab Bhindarwala, Attorney

July 20, 2026

17